IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MARK ANDREW WEBSTER**                                                         **PETITIONER**

v.                  **CIVIL NO.**       **5:09-CV-05030**

**MICHAEL J. ASTRUE, Commissioner**
**Social Security Administration**                                           **RESPONDENT**

## MEMORANDUM OPINION

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) payments under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3).

**I.**      **Procedural Background:**

Plaintiff protectively filed applications for DIB and SSI on February 10, 2006, alleging an inability to work since November 2, 1999, due to severe kidney problems and a history of kidney failure; chronic back pain; chronic urinary infections; sleeplessness; chronic fatigue; anger management problems; agoraphobia; and obsessive compulsive disorder (Tr. 105-106, 557-560). The Social Security Administration denied Plaintiff's applications initially and on reconsideration (Tr. 62-63, 65-67, 562-565, 567-568). Pursuant to Plaintiff's request (Tr. 60), Plaintiff had a de novo hearing before an ALJ on June 10, 2008, at which Plaintiff, who was represented by an attorney, and a vocational expert (VE) testified (Tr. 569-608). After considering all of the evidence of record, the ALJ rendered a decision on September 18, 2008,

finding that Plaintiff was not disabled within the meaning of the Act (Tr. 10-17). On the date of the ALJ's decision, Plaintiff was thirty-five years old with a high school education and past relevant work experience as a production laborer (Tr. 107, 111).

The ALJ concluded that the medical evidence established that Plaintiff had medically determinable severe impairments consisting of back pain, kidney stones, a mood disorder, and substance abuse (Tr. 12, Finding No. 3). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments in the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4 (Tr. 13, Finding No. 4). The ALJ determined that Plaintiff was able to perform a wide range of light work subject to non-complex jobs with no more than simple instructions that could be learned by rote with few variables and concrete supervision (Tr. 14, Finding No. 5). Further, the ALJ found, using the Medical-Vocational Guidelines (Grids) as a framework and the VE's testimony, that Plaintiff could perform a significant number of jobs in the national economy, such as a poultry deboner, a poultry eviscerator, and a shirt presser (Tr. 17, Finding No. 10; Tr. 604-605). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 30, 2008 (Tr. 2-4).

## II.  **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.    Applicable Facts

**Norman Regional Hospital:**

The Plaintiff presented to the Norman Regional Hospital on June 24, 1998 (Tr. 375-385); July 18, 1998 (Tr. 362-374); February 24, 1999 (Tr. 341-361); February 23, 1999 (Tr. 336-340); March 23, 1999 (Tr. 317-335); February 27, 2000 (Tr. 311-313); March 21, 2000 (Tr. 303-310); September 14, 2000 (Tr. 286-302); January 31, 2001 (Tr. 276-285); July 10, 2001 (Tr. 269-275); July 15, 2001 (Tr. 258-268);

**University Hospital:**

The Plaintiff presented to the University Hospital on April 15, 1999 (Tr. 234-252); September 30, 1999 (Tr. 233); October 5, 1999 (Tr. 218-232); October 19, 1999 (Tr. 212-217); December 8, 1999 (Tr. 204-211).

**Washington Regional Medical Center:** (Tr. 447-521)

The Plaintiff presented to the Washington Regional Medical Center on January 17, 2003 (Tr. 516-521); January 27, 2003 (Tr. 508-515); May 5, 2003 (Tr. 496-507); August 7, 2003 (Tr. 488-495); August 6, 2003 (Tr. 486-487); November 19, 2003 (Tr. 468-481); November 21, 2003 (Tr. 462-473); March 17, 2004 (Tr. 455-463) and February 10, 2006 (Tr. 447-454).

**University of Arkansas for Medical Science:** (Tr. 386-446)

The Plaintiff presented to the University of Arkansas for Medical Science on May 21,

2003 (Tr. 434-440); June 17-24, 2003 (Tr. 392-433); July 9, 2003 (Tr. 386-391).

UAMS notes show that the Plaintiff was seen by them because he had a history of stone burden in the past and had a left stent placed in 1997 and that recent x-rays showed a large stone burden in the right renal pelvis, a small stone in the left renal pelvis with an indwelling stent that was out of position, was encrusted with multiple large stones, numbering five or six with stones being at the distal extent and the bladder as well. (Tr. 430). Surgery was performed and nephroureteral stent was placed. (Tr. 398-399). Even in July 2003, after surgery, UAMS noted that the Plaintiff had Extensive calicific debris over the right kidney and that calcification in the left paraspinoous are may also represent ureteral calculus. (Tr. 386).

Except for the visits on February 10, 2006 (foot injury) and March 17, 2004 (rash) to Washington Regional Medical Center all of these visits were for treatments for kidney related problems, including urinary tract infections, stones, surgery and related pain.

**IV.** **Discussion**:

Of particular concern to the undersigned is the ALJ's determination that plaintiff retained the RFC to perform a range of light work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of

Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

While the Plaintiff did assert that his anger management problems, agoraphobia and obsessive compulsive disorder contributed to his disability (Tr. 105) there does not appear to be any support for the claim in the record. The Plaintiff was seen by Dr. Gene Chambers, a neuropsychologist on March 30, 2006. The Plaintiff's estimated IQ was "80 or greater" (Tr. 524) and his GAF was 70. (Tr. 525). A mental RFC assessment was performed May 11, 2006 and the Plaintiff was found to have only mild to moderate limitations. (Tr. 551). Plaintiff testified that it was only his kidney problems that kept him from full time employment. (Tr. 590-591).

The only physical RFC assessment of record was prepared by Dr. Redd, a non-examining, consultative physician who never examined plaintiff. (Tr. 527-534). Dr. Redd concluded that the Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour work day and sit about 6 hours in an 8 hour work day. The Plaintiff had no limitations on his ability to push and/or pull. (Tr. 528). It does not appear that any reference was made to the difficulty that Plaintiff had with his kidneys or how that would factor into his ability to perform.

It also appears that Dr. Redd had only a sampling of the the medical records of the Plaintiff. (Tr. 536). Particularly absent were the medical records from his visit to UAMS on July 9, 2003 after his surgery in June 2003. The impression of Dr. Joyce with UAMS at that time was

"extensive calicific debris overlies the right kidney and calification in the left paraspinoous area may also represents ureteral calculus. (Tr. 386).

Also absent from the records supplied to Dr. Redd were the Plaintiff's visits to Washington Regional Medical Center on November 19, 2003 (Tr. 468-485) and November 21, 2003. (Tr. 462-463). The Plaintiff came back in to WRMC complaining of back/flank pain and vomiting. (Tr. 468). The hospital determined that the "left kidney is atrophic (wasting away) but does not demonstrate parenchymal uptake and excretion. The right kidney is enlarged and demonstrated marked hydronephrosis with cortical thinning. There are innumerable punctate calculi within the right intrarenal collection system and in the right perinephric space.. On image #41 there is a 4mm stone which appears to be in the proximal right ureter. Minimal periephric fat stranding is present about the right UPJ. The distal or downstream aspect of the right ureter is nondilated." (Tr. 482). On November 21, 2003 the Plaintiff returned to the hospital to recheck the kidney infection. (Tr. 462).

These records certainly seem relevant and the court believes should have been included by Mr. Lance Howell with the few records that were supplied to Dr. Redd. Given the long history of this Plaintiff with kidney difficulties and the latest medical evidence in the file the court does not find Dr. Redd's opinion to constitute substantial evidence of plaintiff's RFC. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). The court believes remand is necessary to allow the ALJ to develop the record further regarding plaintiff's RFC. *See* 20 C.F.R. §404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

There are no relevant medical records for any time period after November 21, 2003. The court does note that the Plaintiff did present twice to Washington Regional Medical Center for unrelated matters on March 17, 2004 (Tr. 455) and February 10, 2006. (Tr. 447). The Plaintiff, however, testified that the problem persisted through the hearing date and that he was continuing to expel stones or required to have them removed surgically. (Tr. 592-593). The Plaintiff stated that a stone was present at the time of the hearing (Tr. 595) and that the only reason he could not work was as a result of his kidney problems. (Tr. 586).

Besides the inadequate records that were furnished to the non-examining expert it appears that the Plaintiff's claim for disability is of a specialized nature pertaining to the effect that his kidney disease has upon his ability to work. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527. No such opinions are present in this case.

## V.     Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 19th day of January 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE